# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBRA BYERS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____) | Case No. 12-1435-CM |

## MEMORANDUM AND ORDER

Plaintiff Debra Byers brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's denial of plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 and 1381. Finding no error in the Commissioner's analysis, the court affirms the decision of the Commissioner.

**I. Background**

Plaintiff protectively filed for benefits in November 2009. The agency denied her applications initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge ("ALJ"). Plaintiff's request was granted, and plaintiff appeared with an attorney for a hearing before ALJ Edmund C. Werre on March 17, 2011. At the hearing, the ALJ received testimony from plaintiff and a vocational expert.

Thereafter, the ALJ issued a decision on April 11, 2011. He determined that plaintiff has not performed substantial gainful activity since November 5, 2009, and that she has severe impairments

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

-1-

including seizure disorder and migraine headaches. The ALJ found that plaintiff's impairments do not meet or medically equal the criteria of any listed impairments.

The ALJ considered the evidence and assessed plaintiff's residual functional capacity ("RFC"). He assessed plaintiff with the RFC to perform a full range of work at all exertional levels. But the ALJ determined plaintiff should have no exposure to temperature or humidity extremes or pulmonary irritants, no exposure to workplace hazards such as dangerous moving machinery or unprotected heights, and should not operate motorized vehicles.

Based on the RFC, the ALJ concluded plaintiff is unable to perform her past relevant work. But he determined that, considering plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that plaintiff can perform. The ALJ concluded plaintiff is not disabled within the meaning of the Act and denied plaintiff's applications.

Plaintiff sought, but was denied, Appeals Council review of the ALJ's decision. Therefore, the ALJ's decision became the final decision of the Commissioner. Plaintiff timely filed this case requesting judicial review of the Commissioner's decision.

**II.     Legal Standard**

Section 405(g) of the Social Security Act allows an individual to seek judicial review of any final decision of the Commissioner made after a hearing to which the individual was a party. The court's role in conducting this review is to determine (1) whether the ALJ applied the correct legal standard, and (2) whether the factual findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g) (stating that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). In completing this review, the court may

"neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation and citation omitted).

Under Section 423(d) of the Social Security Act, a person is under a disability when the individual can establish that he is unable to engage in any substantial gainful activity by reason of a physical or mental impairment that is expected to result in death or to last for a continuous period of not less than twelve months. To evaluate disability, the Commissioner uses a five-step sequential process. 20 C.F.R. § 416.920. Step one requires the Commissioner to determine whether the claimant has engaged in substantial gainful activity. *Id.* Step two requires the Commissioner to determine whether the claimant has a severe medical impairment. *Id.* Step three requires the Commissioner to determine whether the severity of the claimant's impairments meets or equals a listing and the duration requirement. *Id.*

After evaluating steps one through three, the Commissioner assesses the claimant's RFC. The Commissioner then uses the RFC for steps four and five. Step four requires the Commissioner to consider the claimant's RFC and determine whether the claimant can perform past relevant work. *Id.* Step five requires the Commissioner to determine whether—considering the claimant's RFC and vocational factors of age, education, and work experience—the claimant is able to perform other work in the economy. *Id.* In steps one through four, the burden is on the claimant. *Williams v. Bowen*, 844 F.2d 748, 751 n.2 (10th Cir. 1988). In step five, however, the burden shifts to the Commissioner. *Id.* at 751.

### III. Analysis

Plaintiff makes three challenges to the Commissioner's decision. **First**, plaintiff contends the ALJ erred in evaluating the credibility of plaintiff's allegations of symptoms resulting from her headaches. The ALJ found that plaintiff's headaches might cause the alleged limitations and that

there is a nexus between plaintiff's allegations regarding her limitations and her headaches. But, after considering the evidence, he found plaintiff's "allegations of disability to be less than fully credible." (Doc. 11-2 at 21.) The ALJ explained:

> The claimant does have a history of migraine headaches. Treatment notes from the claimant's primary care physician, Dr. Verdon Parham, M.D., indicate that the claimant's headaches occur two to three times per week and are accompanied by nausea. Dr. Parham noted that the claimant's headaches respond to over-the-counter medications such as Excedrin and Tylenol. The undersigned notes that the claimant's migraines have not required emergency room treatment, and that the claimant has not been treated with prescription pain medication. An MRI of the claimant's head performed on November 16, 2009 found essentially unremarkable results apart from "slight" atrophy of the cerebellum.

(*Id.* (internal citation omitted); *see also id.* at 22.) The ALJ also noted plaintiff's financial interest in the outcome of the applications. (*Id.* at 22.)

Plaintiff argues the ALJ's credibility determination lacks support because she did receive emergency room treatment and prescription medication for her headaches. Plaintiff is correct that, in November 2009, she presented several times at the hospital complaining about headaches and other pain. She also experienced several seizures during the month of November and was prescribed various medications to address all of her symptoms. But plaintiff does not identify any record evidence suggesting hospital treatment for her headaches after November 2009 even though she testified that her headaches got worse after this date.

Similarly, plaintiff failed to identify any medicine prescribed after November 2009 for her headaches. Plaintiff contends Dr. Croom prescribed Keppra (an anti-epilepsy drug) and mirtazapine (an anti-depressant drug) for her headaches. But the treatment notes identified by plaintiff do not indicate that she reported any headaches to Dr. Croom. And the records indicate Dr. Parham—not Dr. Croom—prescribed mirtazapine to treat plaintiff's reported sleep problems. In addition, and importantly, plaintiff testified that she took over-the-counter Excedrin and Tylenol for her headaches.

-4-

The court concludes that the short-term anomaly in November 2009 does not undermine the ALJ's consideration of plaintiff's conservative course of treatment in analyzing her credibility.

Plaintiff also contends the ALJ erred by relying on diagnostic imaging in evaluating her credibility because "[a]n MRI cannot diagnose migraine headaches." (Doc. 12 at 14.) The Tenth Circuit has made clear that an ALJ errs when he requires diagnostic testing or objective medical evidence for impairments when no such test exists. *Pennington v. Chater*, No. 96-5177, 1997 WL 297684, at *3 (10th Cir. June 5, 1997). And the Tenth Circuit has stated that it is not aware of medical procedures to objectively evaluate either the severity of a migraine or pain. *Id.* at *3. In this case, however, the ALJ did not require objective medical evidence in evaluating plaintiff's migraines. He simply observed that the diagnostic testing revealed no significant abnormality. Plaintiff has shown no error in the ALJ's credibility finding.

**Second**, plaintiff contends the ALJ failed to address plaintiff's ability to function on a "regular and continuing basis" as required by Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996). She argues the ALJ did not provide "a narrative discussion as to how the evidence supported his RFC findings." (Doc. 12 at 16.) And that the RFC analysis is not supported by substantial evidence because it is based "only on the state agency assessments[.]" (*Id.*)

SSR 96-8p outlines the policies regarding the assessment of the RFC in disability cases. That ruling includes a narrative discussion requirement. The discussion should cite specific medical facts and nonmedical evidence and describe how the evidence supports each conclusion. But the discussion does not have to cite "to a medical opinion, or even to medical <u>evidence</u> in the administrative record for each RFC limitation assessed." *Castillo v. Astrue*, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).

The ALJ in this case summarized, discussed, and explained the record evidence. He found plaintiff's allegations of pain less than credible. He gave little weight to the third-party function reports submitted by plaintiff's mother and sister. And he gave significant weight to the administrative findings of fact made by the state agency medical physicians and other consultants. Based on these credibility assessments and all the record evidence, the ALJ determined plaintiff's RFC. His analysis satisfies the narrative discussion requirement of SSR 96-8p.

Plaintiff appears to argue that the ALJ failed to indicate how the medical evidence and opinions support specific limitations (i.e., plaintiff's ability to work on a regular and continuing basis). But "[t]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal citation omitted). Therefore, the ALJ was not required to base the RFC limitations on specific statements in the medical evidence or opinions. He is simply tasked with determining—based on all the evidence—how plaintiff's impairments and related symptoms impact her ability to work. And the ALJ properly performed that analysis.

Plaintiff also contends that the ALJ's RFC assessment lacks substantial evidence because it is only based on the state agency assessments. She argues the ALJ should have developed the record and required additional evidence. Plaintiff is correct that the "Social Security Act places a duty on the ALJ to fully and fairly develop the record as to material issues." *Soverns v. Astrue*, 501 F. Supp. 2d 1311, 1321 (D. Kan. 2007). But the duty is one of inquiry. And, in performing this duty, the ALJ is ordinarily entitled to "rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (internal quotation omitted).

The ALJ asked plaintiff's counsel at the hearing whether the record was current, and her attorney indicated that there were some additional visits with plaintiff's primary care physician but they would be cumulative. (Doc. 11-2 at 29 and 50.) Plaintiff's counsel never indicated that additional evidence was necessary or that the record required further development. The ALJ analyzed the available evidence and determined that plaintiff's impairments were not as severe as alleged. Plaintiff has the burden of proving disability. She could have furnished additional evidence, but she did not. Plaintiff cannot complain that the lack of evidence is the ALJ's fault. Her second argument fails.

**Third**, plaintiff argues the ALJ erroneously discounted the third-party statements of her mother and sister. Judge Lungstrum recently addressed a similar argument in *Croley v. Colvin*, No. 12-cv-1101-JWL, 2013 WL 615564 (D. Kan. Feb. 19, 2013). The plaintiff in *Croley* argued the ALJ erred in weighing the lay opinion of the plaintiff's mother. After analyzing Tenth Circuit law, Judge Lungstrum explained:

> Thus, the law in the Tenth Circuit is clear with regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors. The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion. Nonetheless, he may do so in explaining the rationale for his decision.

*Id.* at *6. Based on this analysis, Judge Lungstrum rejected the plaintiff's argument because the ALJ's decision demonstrated that he considered the plaintiff's mother's opinion. *Id.*

The ALJ's written decision in this case noted:

> Opinions were also provided by the claimant's mother and sister in third-party function reports. These opinions are given little weight as they are lay opinions based on casual observation rather than objective medical and [sic] testing. They are also based upon loyalties of family. They certainly do not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe.

(Doc. 11-2 at 22 (internal citations omitted).)  This discussion affirmatively shows the ALJ considered the third-party statements of plaintiff's mother and sister.  Under Tenth Circuit law, this is all he was required to do.   Nevertheless, the ALJ additionally explained several reasons for discounting these reports.  Plaintiff contends the ALJ's reasons are mere boilerplate.  Even assuming plaintiff is correct, that does not mean the ALJ's rationale is not justified or that he erred in rendering his decision.  This argument fails.[2]  The court finds no error and affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 3rd day of October, 2013, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> United States District Judge

---

[2] Plaintiff argues this case is analogous to *King v. Astrue*, No. 11-cv-2300-JTM, 2012 WL 1231836 (D. Kan. Apr. 12, 2012).  The court finds this case unpersuasive for the reasons outlined in *Croley*.  *See* 2013 WL 615564 at *8–9 (explaining that *King* does not discuss pertinent Tenth Circuit case law).